7275

## GOWDY v. GOWDY.

1. PAYMENT—MORTGAGES—EVIDENCE—LETTERS.—PRESUMPTION is that a bond and mortgage in the hands of a creditor at time of sale under power is then unpaid and that purchaser at such sale paid the bid recited in the deed, but a letter written by the mortgagee after sale under the power is not competent to show payment of mortgage debt before sale.

2. IBID.—DEBTOR AND CREDITOR—EVIDENCE.—That a creditor after maturity of his debt makes a note or other obligation to his debtor is competent to show payment of debt.

3. EVIDENCE.—CONVERSATION between father and son in last hours of the father held not to show any reference to reconveyance of land.

4. MORTGAGES—PAYMENT—EVIDENCE—PRESUMPTIONS.—In the absence of proof to the contrary or of fraud or undue influence or that purchaser held under a trust, it is presumed the purchaser at a foreclosure sale under a power in a mortgage at the instance or by the consent of the mortgagor, paid the purchase money expressed in the deed and the mortgagor and his heirs are bound by the sale.

Before WATTS, J., Clarendon, September term, 1908. Affirmed.

Action by S. W. Gowdy against Ellen Gowdy *et al.* From judgment on verdict, directed for plaintiff, defendants appeal.

*Messrs. Joseph F. Rhame* and *W. C. Davis,* for appellant, cite: *Conversation between father and son should have gone to jury to show fraud:* 75 S. C., 334; Kerr on F. and

M., 385; 20 S. C., 503. *Letter of mortgage competent to show payment:* 19 S. C., 477; 3 S. C., 577; 55 S. C., 347. *How fraud may be proved:* 23 How., 187; 17 Wall., 543; 16 Vt., 385.

Mr. *Charlton DuRant,* contra. No citations.

August 12, 1909. The opinion of the Court was delivered by

MR. JUSTICE WOODS. This action for the recovery of possession of a tract of land, containing two hundred and six acres, depends upon whether a sale made under a power contained in a mortgage was valid against Benjamin L. Gowdy, the mortgagor. A verdict for the plaintiff was rendered by instruction of the Circuit Judge. The exceptions assign error in excluding certain testimony and in holding that the evidence made no issue of fact for the jury.

The cause will be more satisfactorily disposed of by considering whether, from the whole testimony, including that rejected by the Circuit Court, any other inference could be drawn than that the plaintiff was entitled to recover the land.

Benjamin L. Gowdy, then the owner of the land, on the 17th of November, 1879, executed to J. H. Parker & Company a bond and mortgage to secure the sum of $2,000. The mortgage conferred on the mortgagees and their assignees a power of sale in case of default in the payment of the debt. Parker & Company on the 1st of March, 1881, assigned the bond and mortgage to Isham Hinson. After due advertisement, Hinson, for alleged default in payment of the debt, offered the land for sale at public auction, and at the sale it was bid off by the plaintiff, S. Watson Gowdy, a son of Benjamin L. Gowdy, for the price of $50. Thereupon Hinson, in the name of the mortgagor, Benjamin L. Gowdy, executed a deed of conveyance of the mortgaged premises to S. Watson Gowdy, express-

ing a consideration of $50, and containing recitals of the power contained in the mortgage, default in payment, advertisement of the sale for three weeks, the sale at public auction, the purchase by S. Watson Gowdy at the price of $50.

Benjamin L. Gowdy, the mortgagor, continued in possession of the land after the sale until his death, in April, 1890. His wife, the defendant, Ellen Gowdy, and his children, the defendants Addie Gowdy, Novel Gowdy and John Gowdy, have been in possession since his death.

The plaintiff introduced the bond and mortgage and proof of the advertisement and sale stated in the deed. The defense was set up by defendants that the attempted sale and conveyance under the mortgage was of no effect, because the mortgage had been paid.

The appeal depends on two inquiries: First, was there any evidence of payment? Second, if there was such evidence, did the course of action of the mortgagor make it unavailable to the defendants?

There is a presumption that the bond and mortgage in the hands of the creditor were unpaid at the time of the sale, and the burden was on the defendants, the heirs at law of the mortgagor, who asserted payment, to prove it. *Adger* v. *Pringle,* 11 S. C., 527. Not content to rest on the presumption, the plaintiff introduced as a witness Hinson, the assignee of the mortgage, who testified there was an unpaid balance due on the mortgage debt at the time of the sale.

We think there is a further presumption that the plaintiff paid his bid of $50 when he took title to the land; for the recital in the deed of the payment of $50 by the purchaser was equivalent to an entry of a credit for that sum on the mortgage. It was against the interest of the creditor to acknowledge payment if none was made, and, therefore, such acknowledgment raises a presumption that the payment was in fact made. *Gibson* v. *Peeples,* 2 McC., 418;

25 Cyc., 1376. Against the case thus presented by the plaintiff, defendants offered in evidence the following letter from Isham Hinson to Mr. Joseph Rhame, attorney for the defendants:

"I have your letter before me, written to Mrs. Ellen Gowdy, asking them to see me. I think I was paid before the sale was made. I do not know who paid me for the mortgage. It has been a long time since the transaction and I did not expect to be called in question about the matter. Hoping this satisfactory * * * ."

This letter was dated 6th of January, 1897, long after Hinson had parted with his lien on the land by the foreclosure sale, and it was, therefore, properly held incompetent. *Kittles* v. *Kittles,* 4 Rich., 422; *Renwick* v. *Renwick,* 9 Rich., 50; *Hobbs* v. *Beard,* 43 S. C., 370, 21 S. E., 305.

When sworn as a witness Hinson admitted writing the letter above mentioned, but even if he had not explained that he found on examination that he was mistaken in his impression that the mortgage had been paid before sale, his admission that he wrote the letter could not make its declarations written in 1897, after his interest was at an end, competent or give it any force against the plaintiff.

The defendants, as another proof of payment, offered a due bill for $500 given on 3d of March, 1881, by the mortgagee, Hinson, to the mortgagor, Benjamin L. Gowdy. This was competent evidence; for where a creditor after maturity of the debt, makes a note or other obligation to the debtor, the transaction raises the presumption that the former debt was satisfied. 30 Cyc., 1270; 1 Elliot on Evidence, sec. 119. If nothing else had appeared in the case, it would have been the right of the defendants to introduce the due bill and to have the case submitted to the jury on the issue of payment.

But the plaintiffs introduced evidence that the sale was made by the consent and at the request of the mortgagor, and that after the sale he verbally acknowledged the title

of the plaintiff, and returned it for taxes in plaintiff's name. The defendants made no issue as to the fact that the mortgagor had procured the sale, but, on the contrary, their counsel, with commendable candor, plainly indicated to the Court that they expected to prove that the mortgagor was unduly influenced by the plaintiff, in that the plaintiff aroused his apprehension with respect to the result of a prosecution, then pending against him in the Federal Court for pension frauds. If there had been any evidence that the plaintiff had overreached the mortgagor or unduly influenced him to have the land sold, then it would have been reversible error to exclude the due bill as evidence of payment, or to direct a verdict for the plaintiff. But on this point there was a total failure of proof.

In the effort to prove that the plaintiff held the land under some sort of trust, the defendants attempted to introduce this testimony of W. T. Kennedy, which was excluded as irrelevant: "Q. Now, state what passed in the presence of Mr. Watts Gowdy there between the three parties there, Mr. Ben Gowdy, yourself and Mr. Watts Gowdy—that is, on the morning he died? A. That was on the morning of the 17th of April. Well, I judge it was about 8 o'clock when Mr. Watson Gowdy came into the room and spoke to his father, asked him how he was. He told him he was as bad off as he could be. I was standing by the bed and he called to his son, Mr. Watson Gowdy, and told him to get the paper and let Thad do that writing right away. Mr. Watson Gowdy did not pay any attention to it. In a very short time he calls to him again and said a second time, 'Watts, get the paper and let Thad do the writing; you have put it off too long already.' Watts touched me and we walked out into the passage, and he said, 'Write anything that my father wants you to write;' and I said, 'I can not do it;' he said, 'Why?' and I said, 'Your father is dying and it is too late.' He said, 'What shall I do?' and I said, 'Stay out of the room, your father

won't be living an hour longer.' This is all that passed between me and Mr. Watson Gowdy." It will be observed there is nothing whatever to show that this conversation had any reference to a reconveyance of the land; and an inference that it did would rest on mere conjecture.

To state the case in short, the owner of the land, Benjamin L. Gowdy, as is practically admitted, procured or consented to the sale of his land under the mortgage. The plaintiff bid it off and received a deed of conveyance. In the absence of proof to the contrary, it must be presumed on the principal above stated that he paid the purchase money. There is no evidence of any fraud or undue influence used by him in procuring the title, nor any evidence that he held it under a trust. Under these conditions, Benjamin L. Gowdy could not dispute the plaintiff's title, and the defendants, his heirs at law, can stand in no better position.

The judgment of this Court is, that the judgment of the Circuit Court be affirmed.